# In the United States Court of Federal Claims

**No. 20-283C**
**Filed: April 11, 2020**
**Redacted Version Issued for Publication: April 28, 2020[1]**

```
* * * * * * * * * * * * * * * * * *
                                   *
STG LLC,                           *
                                   *
                                   *
            Protestor,             *
                                   *
v.                                 *
                                   *
UNITED STATES,                     *
                                   *   Post-Award Bid Protest; Override
            Defendant,             *
                                   *
v.                                 *
                                   *
                                   *
SCIENCE APPLICATIONS               *
INTERNATIONAL CORP.,               *
                                   *
            Defendant-Intervenor.  *
                                   *
* * * * * * * * * * * * * * * * * *
```

    **Jamie F. Tabb**, Vinson & Elkins LLP, Washington, DC, for protestor. With him was **Tyler Robinson, Elizabeth Krabill McIntyre,** and **John Satira,** Vinson & Elkins LLP, Washington, DC.

    **Amanda L. Tantum,** Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With her were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division. Of counsel was **Major Abraham Young**, Trial Attorney, United States Legal Services Agency.

    **James McCullough**, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, DC, for intervenor. With him was **Michael Anstett**, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, DC.

---

[1] This Opinion was issued under seal on April 11, 2020. The parties were asked to propose redactions prior to public release of the Opinion. This Opinion is issued with some of the redactions that the parties proposed in response to the court's request. Words which are redacted are reflected with the notation: "[redacted]."

**O P I N I O N**

**HORN, J.**

In the above-captioned bid protest, protestor STG LLC (STG), challenges the decision of the United States Army Communication Information Systems Activity – Pacific (the Army) to override the automatic stay of performance required by the Competition in Contracting Act (CICA), 31 U.S.C. § 3553 (2018), upon protestor's filing of a bid protest at the United States Government Accountability Office (GAO) challenging the Army's award of a task order to defendant-intervenor Science Applications International Corp. (SAIC).[2]

**FINDINGS OF FACT**

On August 21, 2019, the Army issued a request for proposals (RFP) for a task order under the Information Technology Enterprise Solutions-3 Services Indefinite Delivery/Indefinite Quality contract. The task order sought mission command network operations and maintenance services, including IT support personnel expertise for the mission, focused mainly in South Korea, with "additional U.S. and ROK [Republic of Korea] military locations as identified by the Government as required and during the yearly two major events/[redacted]." As indicated in the contracting officer's March 3, 2020 Determination & Findings:

> The incumbent Army CHESS ITES-2S Task Order W91 QUZ-06-D-0012-F406 was awarded to General Dynamics Information Technology (GDIT) on 26 August 2016 under FAR 16.505 Fair Opportunity to Compete procedures using a Lowest Price Technically Acceptable (LPTA) source selection methodology. The current contract is comprised of a base year inclusive of a one month phase-in, two (2) 12-month option periods, and a final 8½ month option period.

(capitalization in original). Per the terms of the contract, the contract for the incumbent contractor, GDIT, is scheduled to end on April 12, 2020.

On January 24, 2020, the Army awarded the task order to SAIC,[3] and the same day, January 24, 2020, the Army notified STG that SAIC had been awarded the task order. STG requested a debriefing, and the Army provided written materials on February 3, 2020, provided an oral debriefing on February 5, 2020, and on February 13, 2020, the Army responded to STG's additional written questions by letter. During the debriefing process, the contracting officer provided STG with the following chart regarding the evaluation of STG and SAIC's proposals:

---

[2] On April 6, 2020, the court issued an oral decision the parties. The decision, and this written Opinion, is limited only to the issue of the Army's override decision, and not the merits of Army's evaluation and award to SAIC.

[3] SAIC is scheduled begin contract performance on April 13, 2020.

| Factor | Sub-Factor | STG LLC | SAIC |
|---|---|---|---|
| **Factor 1: Technical Approach** | | | |
| | Subfactor1.1 C2BaselineEnterpriseServices | [redacted] | Good |
| | Subfactor1.2 C2Above-BaselineServices | [redacted] | Acceptable |
| | **Factor 1 - Overall** | [redacted] | Good |
| **Factor 2: Management Approach** | | | |
| | Subfactor2.1 Management Plan | [redacted] | Acceptable |
| | Subfactor2.2 Organizational Chart | [redacted] | Acceptable |
| | Subfactor2.3 Staffing Plan | [redacted] | Good |
| | Subfactor2.4 Adherence to applicable regulations and publications | [redacted] | Acceptable |
| | Sub-factor 2.5 Phase-in Transition Plan (PITP) | [redacted] | Good |
| | Sub-factor 2.6 Quality Control (QC) Plan (QCP) | [redacted] | Good |
| | **Factor 2 - Overall** | [redacted] | Good |
| **Factor 3 – Mission Operation Support** | | | |
| | Sub-factor 3.1 Operational Plan for C2 Systems O&M | [redacted] | Good |
| | Sub-factor 3.2 C2 IT O&M Support Experience using ITIL | [redacted] | Acceptable |
| | **Factor 3 - Overall** | [redacted] | Good |
| **Factor 4: Prime Contractor's Prior Experience** | | [redacted] | Good |
| **Factor 6: Past Performance** | | [redacted] | Satisfactory Confidence |
| **Factor 5: Price** | | | |
| Total Evaluated Price CLINs X001, X002, X003, X004, X005, X006, X007, X008, X009, X010, X014, X016, 0017, 4017 | | [redacted] | $70,963,728.92 |
| Total Evaluated Price + 52.217-8 CLINs X001, X002, X003, X004, X005, X006, X007, X008, X009, X010, X014, X016, 0017, 4017 | | [redacted] | $80,309,273.97 |
| Grand Total Awarded Price (All Years + Including 52.217-8 (ALL CLINs) | | | $98,684,273.97 |

Robert M. Minjack, the contracting officer, also explained to STG that "[t]he award was made in strict conformation with the award criteria delineated in the solicitation," and "award was made to SAIC because their proposal was determined to be the Best Value in accordance with solicitation evaluation terms and conditions."

Subsequently, STG filed its protest at the GAO on February 18, 2020.[4] STG's GAO protest argued

> [redacted] while SAIC's total evaluated price was [redacted] higher, than STG's price. Nonetheless, the Army decided to award the Task Order to SAIC, depriving taxpayers of the [redacted] savings offered by STG. The Army's award of the Task Order to SAIC was the result of a deeply flawed selection decision by the Agency's Source Selection Authority ("SSA") that deviated from several basic procurement rules, as well as an unreasonable and irrational evaluation conducted by the Agency's Technical Evaluation Board ("TEB"). All of these errors were highly prejudicial to STG, and as a result, GAO should sustain the protest.

(capitalization in original). On February 21, 2020, Mr. Minjack sent SAIC a letter, suspending performance of the awarded task order due to the CICA stay. Mr. Minjack contacted GDIT to discuss the possibility of a bridge contract. Although the Army offered a bridge contract to GDIT, on February 27, 2020, GDIT indicated to Mr. Minjack that, "after careful consideration, GDIT cannot accept an additional 120 days sole source contract with the same onerous terms and price."

Thereafter, on March 3, 2020, the Army issued a Determination & Findings. In the Determination & Finding the contracting officer concluded that the "[o]verride of the stay and continued performance of the contract is necessary because it is in the best interests of the United States based upon mission essential reasons which are urgent and compelling, that will not permit waiting for a decision in the protest."

> The contract performance directly supports the Operations and Maintenance of the Combined Enterprise Regional Information Exchange System (CENTRIXS) Korea (K) and the Secret Internet Protocol Router Network (SIPR). [redacted].
>
> CENTRIXS-K is the U.S. and Korean classified coalition network that enables information sharing through the use of email and web services, chat, voice over internet protocol and GCCS-J [Global Command and Control System – Joint] systems. GCCS-J is the C41 system that fuses command and control capabilities into a comprehensive, interoperable system by exchanging imagery, intelligence, status of forces, and planning information. GCCS-J is the principal foundation for dominant battlespace awareness, providing an integrated, near real-time picture of the battlespace necessary to conduct joint and multinational operations. It offers vital connectivity to the systems the joint warfighter and coalition forces use to plan, execute, and manage military operations. This includes the systems that provide the vital Common Operational Picture and

---

[4] The case number at GAO for STG's protest is B-418490.1. As of April 6, 2020, the date of the court's oral decision in the above captioned protest, GAO had not issued a decision on STG's protest.

Intelligence sharing databases. Any delay in the execution of the procurement would jeopardize the mission and eventually lead to overall failure.

(capitalization in original). In the Determination & Findings, the contracting officer explained:

Basis for Override of the Stay: Override of the stay and continued performance of the contract is necessary because it is in the best interests of the United States based upon mission essential reasons which are urgent and compelling, that will not permit waiting for a decision in the protest.

Prior to making the decision to authorize this override, the following were considered:

(1) whether significant adverse consequences will necessarily occur if the stay is not overridden;

(2) whether reasonable alternatives to the override exist that would adequately address the circumstances presented;

(3) how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs; and

(4) the impact of the override on competition and integrity of the procurement system.

(emphasis and capitalization in original).

For the first factor, the Determination & Findings stated:

It is imperative that continued performance for National Security is unimpeded. No other reasonable alternatives to the override exist. USACISA mission supported by the contract performance directly sustains the Operations and Maintenance and Cybersecurity of the Combined Enterprise Regional Information Exchange System (CENTRIXS) Korea (K) and the Secret Internet Protocol Router Network (SIPR). [redacted]. This is an enormous mission capability to take on without any type of transition or for a very short period contract.

> [redacted] Failure to approve the CICA Stay Override will put National Defense, National Security and Allied missions in grave jeopardy of certain failure.[5]

(capitalization in original). Regarding the second factor, the contracting officer explained that no reasonable alternatives exist, first, because the Amy cannot perform the operations itself because it does "[redacted] in order to provide the required quality and level of support." Second, the contracting officer explained, the Army's contract with the incumbent contractor GDIT cannot be extended because the contract does not have any remaining option periods, and, moreover, GDIT refused an offer of a bridge contract under the current terms of its contract. Additionally, the contracting officer explained

> there is significant evidence to demonstrate that GDIT is not able to satisfactorily perform the required services even though they are the incumbent. The documented past performance ratings in CPARS base through the option 2 performance periods for the incumbent contractor have been marginal and the Government has indicated we would not recommend them for this work in the future. (See attached CPARS for Base, Option 1 and Option 2). Specific critical performance issues include, but are not limited to, not maintaining the network readiness at [redacted] which is the required minimum level, numerous key personnel vacancies which were not filled within the timeframes of the contract terms and conditions and less than minimal overall staffing to provide the required quality and level of support. The marginal performance has continued into the current option period. The incumbent contractor continues to degrade their performance, which cannot likely be overcome, to the point where Government

_____

5 The March 3, 2020 Mission Impact Statement included with the Determination & Findings explained:

> Any delay in the execution of the Cybersecurity, Network Operations & Maintenance of Information Technology Support (CNO&MITS) contract with SAIC will result in a [redacted] lapse of contractor operations and maintenance support for the Combined Enterprise Regional Information Exchange System - Korea (CENTRIXS-K) and the Secret Internet Protocol Router Network (SIPR) network throughout the Korean Peninsula beyond 12 April 2020. The Army cannot continue to suspend performance of the contract and await the issuance a protest decision because doing so would have a severe adverse impact on U.S. Forces and their ability to meet the armistice and contingency missions. An override of the current CICA is in the best interest of the United States based on the following urgent and compelling needs that directly impact the mission critical requirements supporting National Defense, National Security and Allied support related to the defense of the Korean Peninsula.

(capitalization in original).

augmentations had to be made in order to provide the minimum support required. There also have been multiple Contract Deficiency Reports (CDRs), due to continued understaffing impacting performance for the Operations and Maintenance of the networks. The incumbent's staffing levels have decreased significantly in the past 9 months and continue on a downward trend more rapidly in the past 3 months due to the pending and eventual contract award. The incumbent's staff not hired or pending to be hired by awardee are moving or have already moved to other positions or jobs. If the incumbent is awarded a sole source bridge contract, there is little evidence that they will be able to re-obtain the required qualified personnel in short order and therefore a high risk of adverse consequences and of imminent failure of all aforementioned missions described above.

Accordingly, I find that these options are not reasonable alternatives to a CICA Stay Override.

(capitalization in original). Regarding the third factor, the contracting officer noted that "[i]f GAO were to sustain the protest, the Army might incur costs that are more than de minimis depending on the corrective action required and taken. However, this is an acceptable risk given the serious consequences of stayed performance for this contract action." The Determination & Findings concluded: "Therefore, I find that the benefits of overriding the stay and proceeding with performance greatly outweigh the potential costs of not doing so." For the fourth factor the contracting officer stated in the Determination & Findings:

Although ACC [the Army] recognizes the important role of the GAO protest process in the procurement review process and respects the automatic stay provisions found in FAR 33.104. However, FAR expressly permits an agency to override this stay in limited instances, where, as here, an agency has urgent and compelling reasons for an override. ACC-411th CSB [Contracting Support Brigade] has explored alternative means to meet the requirement but found none that were acceptable. The urgent need will be met through the performance of the contract awarded to SAIC. This includes the 2 months phase-in period from 13 February 2020 to 12 April 2020 and then full performance for up to 9.5 months to 31 January 2021 to meets an immediate, critical mission need. In short, overriding the stay is not only consistent with the specific rules and regulations of our acquisition system, but is also consistent with its overarching principles of competition and integrity.

(capitalization in original). The contracting officer concluded in the Determination & Findings:

Based upon a review of the protest, the Mission Impact Statement, the Legal Memorandum, the supporting documents, and the above findings, I hereby endorse the findings recounted in the above pages, because the best interests of the United States based upon mission essential reasons

which are urgent and compelling, will not permit waiting for a decision concerning the protest.

On March 12, 2020, protestor filed the override protest in this court. Protestor argues "[t]he Army's decision to override the stay of performance of the task order is arbitrary and capricious and contrary to law," claiming that "the Army's D&F [Determination & Findings] appears to pay lip service to each of the Court's identified factors, but provides no evidence that the Army reasonably applied those factors in reaching its decision to override the stay of performance." Protestor complaint continued: "Instead, the Army's override decision appears to be based only on generic, unsupported statements that the factors were considered and that the Army's decision was consistent with those questions." Therefore, protestor claims, "the Army's decision to allow performance of the awarded task order to proceed is arbitrary and capricious, unreasonable, and contrary to law." The next day, March 13, 2020, the court held an initial hearing with the parties, and the parties and the court agreed to proceed on an expedited schedule for the above captioned protest with the parties filing cross-motions for judgment on the Administrative Record. On April 6, 2020, the court issued an oral decision at a hearing with the parties indicating to the parties the override would be sustained, thus granting defendant and intervenor's motions for judgment on the Administrative Record and denying protestor's motion for judgment on the Administrative Record. This Opinion incorporates and memorializes the April 6, 2020 oral decision issued to the parties.

## DISCUSSION

Initially, defendant argues "STG cannot establish that it is an interested party with standing to assert a challenge to the override." Protestor responds that "STG has standing to bring this CICA override challenge. Given the development of CICA override case law at the Court, this should go without saying."

The Tucker Act grants the United States Court of Federal Claims

jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(a)(1) (2018). In order to have standing to sue as an "interested party" under this provision, a disappointed bidder must show that it suffered competitive injury or was "prejudiced" by the alleged error in the procurement process. See Todd Constr., L.P. v. United States, 656 F.3d 1306, 1315 (Fed. Cir. 2011) (To prevail, a bid protester must first "'show that it was prejudiced by a significant error' (i.e., 'that but for the error, it would have had a substantial chance of securing the contract).'" (quoting Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378, 1380 (Fed. Cir. 2009))); see also Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1317 (Fed. Cir. 2007); Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 281 (2012); Linc Gov't Servs.,

LLC v. United States, 96 Fed. Cl. 672, 693 (2010) ("In order to establish standing to sue, the plaintiff in a bid protest has always needed to demonstrate that it suffered competitive injury, or 'prejudice,' as a result of the allegedly unlawful agency decisions." (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1580-81 (Fed. Cir. 1996); Vulcan Eng'g Co. v. United States, 16 Cl. Ct. 84, 88 (1988); and Morgan Bus. Assocs., Inc. v. United States, 223 Ct. Cl. 325, 332 (1980))). In order to establish what one Judge on this court has called "allegational prejudice" for the purposes of standing, the bidder must show that there was a "substantial chance" it would have received the contract award, but for the alleged procurement error. See Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. at 675; Hyperion, Inc. v. United States, 115 Fed. Cl. 541, 550 (2014) ("The government acknowledges that proving prejudice for purposes of standing merely requires 'allegational prejudice,' as contrasted to prejudice on the merits . . . ."); Bannum, Inc. v. United States, 115 Fed. Cl. 148, 153 (2014); see also Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003); Statistica, Inc. v. Christopher, 102 F.3d at 1581; Archura LLC v. United States, 112 Fed. Cl. 487, 497 (2013); Lab. Corp. of Am. v. United States, 108 Fed. Cl. 549, 557 (2012). Because standing is a jurisdictional issue, this showing of prejudice is a threshold issue. See Corus Grp. PLC. v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002).

In a post-award bid protest, such as the above-captioned bid protest, the "protestor must 'establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest.'" Mgmt. & Training Corp. v. United States, 137 Fed. Cl. 780, 783-84 (2018) (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006)); see also Digitalis Educ. Sols., Inc. v. United States, 664 F.3d 1380, 1384 (Fed. Cir. 2012) (quoting MCI Telecomms. Corp. v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989)); Timberline Helicopters, Inc. v. United States, 140 Fed. Cl. 117, 120 (2018); Contract Servs., Inc. v. United States, 104 Fed. Cl. 261, 269 (2012).

Although "standing is not often discussed at length in CICA stay override cases," see PMTech, Inc. v. United States, 95 Fed. Cl. 330, 348 (2010), several Judges on the United States Court of Federal Claims have found that, by bidding on a procurement which was stayed pending a protest at the GAO, a protestor has enough of a direct economic interest in the stayed procurement and has standing to challenge an override of the CICA stay in this court. See Supreme Foodservice GmbH v. United States, 109 Fed. Cl. 369, 381 (2013) (evaluating the standing of a protestor challenging an override of the CICA stay and stating that, "[a]s an actual offeror challenging the award of a contract before the GAO, there is no question that Supreme [the protestor] is an interested party for purposes of our court's jurisdiction"); URS Fed. Servs., Inc. v. United States, 102 Fed. Cl. 664, 670 (2011) (determining that a protestor had standing to challenge an override of a CICA stay implemented in connection with a bid protest at the GAO when the protestor had bid on the solicitation at issue at the GAO, notwithstanding that the protestor was not the incumbent contractor), recons. denied, 102 Fed. Cl. 674 (2012);

PMTech, Inc. v. United States, 95 Fed. Cl. at 348; Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 579 (2003).

In the above-captioned bid protest, STG submitted a proposal in response to the RFP at issue in STG's post-award bid protest at the GAO. Pursuant to CICA, performance of the contract awarded to SAIC following the Army's evaluation of proposals received in response to the RFP was stayed until the Agency decided to override the CICA stay. Therefore, STG, as an actual offeror, has a direct economic interest in the resultant contract issued under the Army's RFP and has standing in the above-captioned bid protest to challenge the Army's override of the CICA stay implemented when STG filed its protest at the GAO. See Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 381; URS Fed. Servs., Inc. v. United States, 102 Fed. Cl. at 670.

In the above-captioned bid protest, STG challenges the Army's decision to override the CICA stay that was implemented in connection with STG's bid protest at the GAO. In protestor's motion for judgment on the Administrative Record, protestor argues that the Army "acted arbitrarily and capriciously and contrary to law in overriding the mandatory stay of performance." In response, intervenor argues that "[t]he administrative record demonstrates the reasonableness of the Army's decision to override the stay of contract performance, notwithstanding STG's timely-filed GAO protest," and defendant argues that the Army "rationally determined that an override was in the best interests of the United States based upon mission essential reasons which are urgent and compelling, that would not permit waiting for a decision in the GAO protest."[6]

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision.

---

[6] Defendant, in its motion for judgment on the Administrative Record, also argues that "STG repeatedly insinuates that the Army acted in bad faith in deciding to override the D&F and that the D&F contains falsehoods," but "STG makes no attempt to provide the required proof for such claims, demonstrating their complete lack of foundation." Protestor responds that "[c]ontrary to the Defendant's assertions, STG has not argued and does not here argue that any Government official has acted in bad faith," and argues that when a protestor "challenges the decisions made by agency officials, points out that their findings are unsupported by the record, and argues that their decisions do not meet the requirements of reasonable decision-making under the Administrative Procedure Act, it does not mean a plaintiff has alleged that the agency acted in bad faith." Therefore, protestor argues that "the Court need not consider this tangential argument further." The court agrees with protestor.

See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir. 2004) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319.

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting Banknote Corp. of Am. v. United States, 365 F.3d at 1350-51 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000)))), reh'g and reh'g en banc denied (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2018);[7] see also Tinton Falls

---

[7] The language of 5 U.S.C. § 706 provides in full:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and

Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000)))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp.

---

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285–86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)), subsequent determination, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). """If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.""" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 992 (Fed. Cir. 2018) (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("The rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'"); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The

arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381)), appeal withdrawn, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 382; Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 392 (1999) ("Courts must give great deference to agency procurement decisions and will not lightly overturn them." (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985))), appeal dismissed, 6 F. App'x 867 (Fed. Cir. 2001), and superseded by regulation as recognized in MVS USA, Inc. v. United States, 111 Fed. Cl. 639 (2013).

> According to the United States Court of Appeals for the Federal Circuit:

> Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958-59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995 (Fed. Cir. 1996); Geo-Med, LLC v. United States, 126 Fed. Cl. 440, 449 (2016); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); Furthermore, according to the United States Court of Appeals for the Federal Circuit:

>Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

PAI Corp. v. United States, 614 F.3d at 1351; see also AgustaWestland N. Am., Inc. v. United States, 880 F.3d 1326, 1332 (Fed. Cir. 2018) ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))); Weeks Marine, Inc. v. United States, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))).

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Tinton Fall Lodging Realty, LLC v. United Sates, 800 F.3d at 1364; see also Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995-96; Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 578 (2017); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

>A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, Fed. Cl. 550, 555 (2017); FirstLine Transp. Sec., Inc. v. United States, 119

Fed. Cl. 116, 126 (2014), appeal dismissed (Fed. Cir. 2015); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Archura LLC v. United States, 112 Fed. Cl. at 496. To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); IT Enter. Sols. JV, LLC v. United States, 132 Fed. Cl. 158, 173 (2017) (citing Bannum v. United States, 404 F.3d at 1357-58); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 694-96 (2010).

Under CICA's automatic stay, agencies, upon receiving notice that the award is being protested, are to "direct the contractor to cease performance under the contract and to suspend any related activities that may result in additional obligations being incurred by the United States under that contract." See 31 U.S.C. § 3553(d)(3)(A)(ii)(2). CICA gives the Agency certain options to override a CICA stay, and, in the above-captioned bid protest, the Agency did so. CICA provides:

> (C) The head of the procuring activity may authorize the performance of the contract (notwithstanding a protest of which the Federal agency has notice under this section)--
>
> > (i) upon a written finding that--
> >
> > > (I) performance of the contract is in the best interests of the United States; or
> > >
> > > (II) urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest; and
> >
> > (ii) after the Comptroller General is notified of that finding.

31 U.S.C. § 3553(d)(3)(C).

Regarding override decisions, the United States Court of Appeals for the Federal Circuit has determined that "28 U.S.C. § 1491(b)(1) grants the trial court jurisdiction over an objection to a violation of 31 U.S.C. § 3553(c)(2)." RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999); see also Dyncorp Int'l LLC v. United States, 113 Fed. Cl. at 302 ("We have jurisdiction under the Tucker Act, 28 U.S.C. § 1491(b) (2006), to review an agency decision to override a CICA stay." (citing RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d at 1289-90)); Beechcraft Def. Co., LLC v. United

States, 111 Fed. Cl. 24, 31 (2013); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 381 ("Challenges to alleged violations of the CICA automatic stay provision are within this jurisdiction." (citing RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d at 1290)).

Although not binding on this court, a template for evaluating an override determination was offered by a Judge of this court in Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705 (2006).[8] See Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 384 ("In Reilly's Wholesale Produce v. United States, 73 Fed. Cl. 705 (2006), one judge of our court surveyed the field of prior decisions and was able 'to distill from the relevant cases a variety of factors that an agency must consider in making an override decision.'" (quoting Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711)); but see PMTech, Inc. v. United States, 95 Fed. Cl. at 343 ("The court in Reilly's Wholesale has provided excellent guidance to this court, and to the procurement community, in identifying factors that may be relevant to most CICA stay override decisions. As to the precedential weight to be accorded the Reilly's Wholesale factors, however, the court in this decision must express some reservations."). Override protests, however, are very fact specific inquiries. See PMTech, Inc. v. United States, 95 Fed. Cl. at 344 (quoting Automation Techs., Inc. v. United States, 72 Fed. Cl. at 727); Automation Techs., Inc. v. United States, 72 Fed. Cl. at 727, 730. As explained in Beechcraft Defense Co., LLC, the Reilly's Wholesale court identified four factors to consider:

> (1) "whether significant adverse consequences will necessarily occur if the stay is not overridden"; (2) "whether reasonable alternatives to the override exist that would adequately address the circumstances presented"; (3) "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs"; and (4) "the impact of the override on competition and integrity of the procurement system."

Beechcraft Def. Co., LLC v. United States, 111 Fed. Cl. at 31 (quoting Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711); see also Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 384. The court in Reilly's Wholesale Produce further stated that the "decisional law also indicates that certain factors are irrelevant to this analysis, among them: (i) that the new contract would be better than the old one . . . or (ii) the override and continuation of the contract is otherwise simply preferable to the agency . . . ." Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711.

---

[8] As indicated by the same Judge who issued the Reilly's Wholesale decision, "'the decisions of this court are not binding precedent for judges of this court.'" Park Props. Assocs., L.P. v. United States, 120 Fed. Cl. 787, 790 (2015) (quoting Sotera Def. Solutions, Inc. v. United States, 118 Fed. Cl. 237, 258 (2014)), aff'd, 677 F. App'x 676 (Fed. Cir. 2017).

In discussing Reilly's Wholesale, although a Judge of this court argued that "[t]he court's focus should be on whether the CICA stay override decision was rational and whether the agency considered relevant factors, not on whether the agency conformed its analysis to a specific framework elaborated by this court," the Judge, nonetheless acknowledged "the court recognizes the utility of the analytical framework provided by Reilly's Wholesale, but does not consider that the Reilly's Wholesale factors govern the outcome of this case." PMTech, Inc. v. United States, 95 Fed. Cl. at 345. Likewise, the undersigned is not bound by the Reilly's Wholesale factors, but believes the factors are a useful tool to help analyze the Agency's decision to override the automatic stay based on urgent and compelling circumstances in the context of APA review. See 5 U.S.C. § 706(2)(A).

The court in Reilly's Wholesale Produce v. United States set forth an analytical framework that was based on "a variety of factors that an agency must consider in making an override decision based upon urgent and compelling circumstances."[9] Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711. The factors articulated in Reilly's Wholesale Produce v. United States "have been applied when the stay override is based upon urgent and compelling circumstances, or based upon the best interests of the United States."[10] Charles F. Day & Assocs., LLC v. United States, 120 Fed. Cl. 767, 771 (2015); see also Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 384 (noting that the factors articulated in Reilly's Wholesale Produce v. United States "have been employed in cases reviewing overrides based on either justification"); E-Mgmt. Consultants, Inc. v. United States, 84 Fed. Cl. 1, 6 (2008) (applying the Reilly's Wholesale Produce v. United States factors to an agency's decision to override the CICA stay, in which the agency justified the override decision as being in the "best interests of the

---

[9] In a footnote, the court in Reilly's Wholesale Produce v. United States stated:

Admittedly, some of the cases cited for the factors that are legally relevant and irrelevant in this context are ones in which the agency override decision was based upon the "best interests" of the United States. However, in the court's view, the rationale employed in those cases has, where indicated, application to the review of an override decision based upon urgent and compelling circumstances.

Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711 n.10.

[10] In Dyncorp International LLC v. United States, a Judge of the United States Court of Federal Claims declined to apply the factors set forth in Reilly's Wholesale Produce v. United States to an agency's override of the CICA stay "in the context of a 'best interest' justification." See Dyncorp Int'l LLC v. United States, 113 Fed. Cl. at 303 n.4. The Dyncorp International court stated that the Reilly's Wholesale Produce v. United States test "overstates what is required by the arbitrary and capricious standard particularly in the context of a 'best interest' justification." See id. The Dyncorp International court stated that the "test for evaluating the merits of an agency's override decision is whether the agency's determination was arbitrary, capricious, or otherwise not in accordance with law." Id. at 302 (footnote omitted) (citing 5 U.S.C. § 706 (2012)).

United States"). The undersigned is not bound by the Reilly's Wholesale factors when evaluating the Agency's best interests justification for overriding the CICA stay, but believes that the Reilly's Wholesale factors are a useful analytical tool for evaluating whether the Agency's best interests justification was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A).

Protestor argues that the "application of the Reilly's Wholesale factors is entirely appropriate because the Army itself structured its D&F to correspond to these four factors. As a result, if the Army's D&F justifications are insufficient or unreasonable under the four Reilly's Wholesale factors, then its overall Override Decision itself must also be arbitrary and capricious." (citations omitted). In its motion for judgment on the Administrative Record, defendant states, "whether Reilly's accurately states the law or not, the Army has adopted the Reilly's factors when making its override decision. Thus, even though Reilly's does not apply, when an agency applies the Reilly's factors in its analysis, the Court can consider them in favor of the APA standard of review." (citations omitted). As indicated above, this court is not restricted by the Reilly's Wholesale factors, but the factors are a useful tool to help analyze the Army's decision to override the automatic stay based on urgent and compelling circumstances in the context of APA review. See 5 U.S.C. § 706(2)(A). Additionally, as noted by protestor, and the defendant itself, the contracting officer used the framework of the Reilly's Wholesale factors, and so this court includes in its analysis of the contracting officer's Determination & Findings consideration of the Reilly's Wholesale factors.

Regarding the first factor, "'whether significant adverse consequences will necessarily occur if the stay is not overridden,'" Beechcraft Def. Co., LLC v. United States, 111 Fed. Cl. at 31 (quoting Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711), protestor argues that "[t]he Army's D&F fails to reasonably explain why its cited adverse consequences only now necessarily require drastic action to prevent alleged harm to American interests." Intervenor argues "the national security concerns set forth in the D&F weigh heavily in favor of the Army's override decision and deserve deference." Defendant contends that "[t]he Army rationally determined that significant adverse consequences to national security, through a lack of security and continued operation of the CENTRIXS-K and SIPR communication networks, would occur absent an override." As noted above, for the first factor, the Determination & Findings stated:

It is imperative that continued performance for National Security is unimpeded. No other reasonable alternatives to the override exist. USACISA mission supported by the contract performance directly sustains the Operations and Maintenance and Cybersecurity of the Combined Enterprise Regional Information Exchange System (CENTRIXS) Korea (K) and the Secret Internet Protocol Router Network (SIPR). [redacted]. This is an enormous mission capability to take on without any type of transition or for a very short period contract.

[redacted] Failure to approve the CICA Stay Override will put National Defense, National Security and Allied missions in grave jeopardy of certain failure.

(capitalization in original). Protestor concedes "that the IT services at issue here are important and contribute to the success of operations in Korea," but argues "the Army has still failed to justify why the cited concerns necessarily will occur absent only the drastic action of overriding the CICA Stay." (capitalization in original). The contracting officer in the Determination & Findings explained that "[redacted]." The lack of services would have far-reaching and [redacted] consequences. The Determination & Findings rationally support a finding that significant adverse consequences will occur if the stay was not overridden in the above captioned protest.[11]

The second Reilly's Warehouse factor, asks whether reasonable alternatives to the override exist that would adequately address the circumstances presented. See Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711. The Determination & Findings stated that no reasonable alternative existed, first, because the Amy cannot perform the operations itself because it does "[redacted] in order to provide the required quality and level of support." The contracting officer in the Determination & Findings also noted:

> The second possibility would be to exercise an option under the incumbent contract or issue a sole source bridge contract to the incumbent, General Dynamics Information Technology (GDIT), for the duration of the protest. The incumbent contract is comprised of a base year, two (2) 12-month option periods, and a final 8½ month option period which ends on 12 April 2020. The contract did not include the FAR 52.217-8 Option to Extend Service because the last date for performance under Army CHESSITES-2S task orders is 12 April 2020. A re-compete for a bridge contract is not possible because of insufficient time to solicit, evaluate, award and then mobilize and phase-in a new contractor as less than two months is left on the incumbent contract. Therefore, a sole source bridge contract is the only possible alternative to continue services with the incumbent in the absence of an override.

(capitalization in original). Additionally, the contracting officer in the Determination & Findings explained:

> there is significant evidence to demonstrate that GDIT is not able to satisfactorily perform the required services even though they are the

---

[11] Defendant argues that "[t]he Court in *Reilly's* opined that 'some of the problems encountered here are, at least in part, of defendant's own making' not as part of its analysis of factor 1, [Reilly's Wholesale Produce v. United States,] 73 Fed. Cl. at 711-14, but rather as part of its weighing of harms. *Id.* at 716." As defendant repeatedly pointed out Reilly's is not binding on this court, and this court use the guidance in Reilly's as the court deems appropriate.

incumbent. The documented past performance ratings in CPARS base through the option 2 performance periods for the incumbent contractor have been marginal and the Government has indicated we would not recommend them for this work in the future. (See attached CPARS for Base, Option 1 and Option 2). Specific critical performance issues include, but are not limited to, not maintaining the network readiness at [redacted] which is the required minimum level, numerous key personnel vacancies which were not filled within the timeframes of the contract terms and conditions and less than minimal overall staffing to provide the required quality and level of support. The marginal performance has continued into the current option period. The incumbent contractor continues to degrade their performance, which cannot likely be overcome, to the point where Government augmentations had to be made in order to provide the minimum support required. There also have been multiple Contract Deficiency Reports (CDRs), due to continued understaffing impacting performance for the Operations and Maintenance of the networks. The incumbent's staffing levels have decreased significantly in the past 9 months and continue on a downward trend more rapidly in the past 3 months due to the pending and eventual contract award. The incumbent's staff not hired or pending to be hired by awardee are moving or have already moved to other positions or jobs. If the incumbent is awarded a sole source bridge contract, there is little evidence that they will be able to re-obtain the required qualified personnel in short order and therefore a high risk of adverse consequences and of imminent failure of all aforementioned missions described above. Accordingly, I find that these options are not reasonable alternatives to a CICA Stay Override.

(capitalization in original). Defendant argues that the "Army rationally concluded that none of the alternatives would allow for continuous service or for adequate performance." Protestor first states "STG does not take issue with the Army's conclusion that performing the work in-house was unreasonable." Protestor, however, continues

the Army's conclusion as to GDIT was arbitrary and capricious and not in accordance with law for several reasons. As explained below, the Army made no attempt to negotiate with GDIT and did not even learn GDIT's potential price in order to make an informed assessment of a bridge contract as an alternative, despite having enough time to do so. Moreover, the Army improperly invoked GDIT's performance record on the incumbent task order as a rationale for concluding that a bridge contract was not a reasonable alternative. In addition, the D&F reveals that the Army failed to consider other possible alternatives to the override, such as temporarily acquiring the services using other contract vehicles. The Court should find that the Army did not properly consider Factor 2 and has therefore not satisfied its burden to justify its Override Decision under Factor 2.

(capitalization in original). Protestor states that "GDIT's initial response was that it was 'open to exploring contractual options in support of continued performance for an additional 120 days' and 'willing to negotiate in good faith' as to the terms and conditions,'" and, therefore, STG blames the Army for the failure to negotiate a bridge contract. The protestor also claims the Army had time to pursue a bridge contract with GDIT. The Administrative Record, however, reflects that ultimately Mr. Minjack, the contracting officer, offered a bridge contract to GDIT, but GDIT indicated that it could not "accept an additional 120 days sole source contract with the same onerous terms and price."[12] In addition, the contracting officer expressed concerns that GDIT may not have been able to successfully perform a bridge contract. As noted above, the contracting officer indicated in the Determination & Finding that GDIT's "staffing levels have decreased significantly in the past 9 months and continue on a downward trend more rapidly in the past 3 months due to the pending and eventual contract award," and "[i]f the incumbent is awarded a sole source bridge contract, there is little evidence that they will be able to re-obtain the required qualified personnel in short order and therefore a high risk of adverse consequences and of imminent failure of all aforementioned missions described above." The contracting officer's concerns appear reasonable, and the court will not second guess the contracting officer's actions. See Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 392 (1999) ("Courts must give great deference to agency procurement decisions and will not lightly overturn them."). The court finds it rational that the Army determined it could not continue contract performance with incumbent, despite protestor's claims, and that it further could not perform the necessary contract functions in-house, necessitating the override so SAIC could begin contract performance.

The third Reilly's Wholesale factor asks "'how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs.'" Beechcraft Defense Co., LLC v. United States, 111 Fed. Cl. at 31 (quoting Reilly's Wholesale Produce v. United States, 73 Fed. Cl. at 711). The Determination & Findings stated if "the override is authorized and the protestor prevails in its protest, the Army will have expended the costs of performance of up to 6 months (including 2 months phase-in) under the awarded contract," and "[i]f GAO were to sustain the protest, the Army might incur costs that are more than de minimis depending on the corrective action required and taken." The contracting officer determined: "However, this is an acceptable risk given the serious consequences of stayed performance for this contract action. Therefore, I find that the benefits of overriding the stay and proceeding with performance greatly outweigh the potential costs of not doing so." The protestor argues "[t]he Army's attempt to address this factor consists of two short paragraphs that are bereft of any actual cost data, and include no evidence that the Army made any serious attempt to even consider all of the potential costs implicated by its Override Decision," and "[t]he Army's analysis is cursory, speculative and unsupported, leaving only a naked assertion that the benefits of the Override Decision outweigh the potential

---

[12] The contracting officer indicated in the Determination & Findings that he believed that GDIT would have proposed "a significant price increase in an attempt to recoup asserted losses on this contract."

costs." Defendant, by contrast, argues "[t]he Army's evaluation took into account the factors described in the D&F and was rational," and the

> Army rationally weighed, against these costs of proceeding with the override, the benefits of overriding the stay – avoiding "the serious consequences of stayed performance," described earlier in the D&F, such as "the severe adverse impact on U.S. Forces and their ability to meet the armistice and contingency missions" and potentially having to receive poor service from the incumbent contractor.

(footnote omitted). Although court agrees with protestor that the Determination & Findings did not include any actual cost data, save the potential cost of performance, the court also agrees with the defendant, that "the benefits at issue here – the Army's readiness and the safety of the military, the American public, and the South Korean public – cannot be quantified. They are nonetheless fully worthy of consideration." Additionally, although protestor argues in order to "conduct a sufficient cost-benefit analysis, the Army must consider, and not ignore, any potentially applicable costs," as defendant notes, the Army was "not required to consider every single possible cost." As noted above, the rational basis test of APA review asks "'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" Dell Fed. Sys., L.P. v. United States, 906 F.3d at 992 (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1351). The contracting officer acknowledged the possibility that if STG's protest at the GAO was ultimately successful the Army could incur costs, and would have "expended the costs of performance of up to 6 months (including 2 months phase-in) under the awarded contract," but determined that for the Army, it was "an acceptable risk given the serious consequences of stayed performance for this contract action. Therefore, I find that the benefits of overriding the stay and proceeding with performance greatly outweigh the potential costs of not doing so." The court defers to the Army's conclusion about the acceptable risk to the Army if STG's protest is successful. See BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. at 508 ("The court is not empowered to substitute its judgment for that of the agency, and it must uphold an agency's decision against a challenge if the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." (quotations omitted)). Therefore, the court finds the Determination & Findings' conclusions regarding this factor were not unreasonable.

As to the fourth factor identified by the United States Court of Federal Claims in Reilly's Wholesale, "the impact of the override on competition and integrity of the procurement system," the contracting officer stated in the Determination & Findings:

> Although ACC [the Army] recognizes the important role of the GAO protest process in the procurement review process and respects the automatic stay provisions found in FAR 33.104. However, FAR expressly permits an agency to override this stay in limited instances, where, as here, an agency has urgent and compelling reasons for an override. ACC-411th CSB [Contracting Support Brigade] has explored alternative means to meet the requirement but found none that were acceptable. The urgent need will be

met through the performance of the contract awarded to SAIC. This includes the 2 months phase-in period from 13 February 2020 to 12 April 2020 and then full performance for up to 9.5 months to 31 January 2021 to meets an immediate, critical mission need. In short, overriding the stay is not only consistent with the specific rules and regulations of our acquisition system, but is also consistent with its overarching principles of competition and integrity.

(capitalization in original). Protestor argues that, despite the foregoing, "the D&F includes no evidence that the Army even considered these serious impacts to competition and the procurement system." The defendant argues that the above statement by the contracting officer demonstrates that the Determination & Findings did show the Army considered the impact on the procurement system. Defendant also points to the Determination & Findings' consideration of the arguments raised by protestor on the merits of the GAO protest. The Determination & Findings stated:

Below is a summary of STG's arguments as well as the Army's initial summary of the response to its protest:

1. **Protestor's Argument #1:** The Government applied unstated evaluation criteria.

**Response Summary:** The award to SAIC on 24 Jan 2020 under the Army CHESS ITES-3S Contract W52P1J-18-D-A075, Task Order W91QVN-20-F-0157 was based upon the evaluation of proposals in accordance with the solicitation terms and conditions. As documented in the Price Negotiation Memorandum/Source Selection Document (PNM/SSDD), Technical Evaluation Board (TEB) Report and Comparative Analysis Recommendation Report the evaluation was in strict conformance with the stated evaluation criteria in the Task Order RFP and any amendments. The Protester is merely substituting its own judgment for that of the SSA's comparative analysis and tradeoff analysis and final best value award determination.

2. **Protestor's Argument #2:** The TEB's evaluation of the offerors under the RFP's non-price factors was unreasonable.

**Response Summary:** The evaluation of proposals was in accordance with the solicitation terms and conditions. The Final TEB Report and evaluation was in strict conformance with the stated evaluation criteria in the Task Order RFP and any amendments. The Protester is merely substituting its own judgment for the judgment of the Government evaluators.

(emphasis and capitalization in original). In addition to considering the merits of the protestor's arguments to determine whether the Army believed the arguments had merit before proceeding with the override, as noted above, the contracting officer also reached

out to the incumbent contractor GDIT to gauge if a bridge contract was feasible. Although GDIT concluded it would not consider a bridge contract on the same terms as the earlier contract, the contracting officer's actions demonstrate that the Army did not rush to override the CICA stay, but instead tried to find an alternative to allow the GAO process to continue. On balance, the Determination & Findings demonstrate that the Army considered the impact that overriding the CICA stay would have on the integrity of the procurement system.

Based on the record before the court, the Army identified significant adverse consequences that would occur if the Army did not have a contractor providing mission command network operations and maintenance services. The Army rationally determined that there were no reasonable alternatives to overriding the CICA stay, considered the costs and benefits associated with overriding the CICA stay, and considered the effects of the Agency's actions on the integrity of the procurement system. The Army decision to override the CICA stay "based upon mission essential reasons which are urgent and compelling, that will not permit waiting for a decision in the protest," therefore, was not arbitrary and capricious. See 31 U.S.C. § 3553(d)(3)(C).[13]

## CONCLUSION

As determined above, the Army's decision to override the CICA stay is sustained. The defendant's and intervenor's motions for judgment on the Administrative Record are **GRANTED**. Protestor's motion for judgment on the Administrative Record is **DENIED**. Protestor's protest is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

As indicated above, this Opinion is limited to the sole issue of the decision of the Army to override the CICA stay. This Opinion did not consider the merits of the evaluation of the proposals or the Army's decision to award the task order to SAIC. If protestor files a subsequent bid protest in this court related to the Army's evaluation of the proposals

---

[13] The court notes that the parties disagree as to the standard to apply if the court were find the override decision was irrational, as protestor argues that "the effect of a declaratory judgment in an override case is to reinsert the previously applicable stay of performance," and argues that it would be "unnecessary to evaluate the additional injunction factors in order to afford the plaintiff relief from the agency's arbitrary and capricious conduct." Defendant argues that because a declaratory judgment in this protest would have the effect of an injunction, "the traditional equitable factors for injunctive relief should be applied to a request for declaratory judgment," and "the Court should reject STG's argument that, when considering the appropriateness of a declaratory judgment, the Court need not consider the injunction factors." As the court has concluded that the override decision was not arbitrary or capricious, the court does not need to reach the issue of what standard to apply.

and award to SAIC, the protestor shall indicate it is related to the above captioned protest, and the Clerk's Office shall assign the newly filed bid protest to the undersigned.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**